UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**TEANDRA ROBERTS o/b/o J.P.**,

    **Plaintiff**,

v.                                                                    Case No. 8:24-cv-1869-AAS

**FRANK BISIGNANO,**
**Commissioner of the Social**
**Security Administration,**[1]

    **Defendant.**
_____/

**ORDER**

Plaintiff Teandra Roberts, on behalf of J.P., is appealing the Commissioner of the Social Security Administration's decision that, although J.P. was entitled to disability benefits as a child, on continued review, he no longer met the definition of disabled and therefore his benefits ceased. After reviewing the record, including the transcripts of the proceedings before the Administrative Law Judge (ALJ), the administrative record, the pleadings, the comparison point decision, and the memoranda submitted by the parties, the Commissioner's decision is **AFFIRMED**.

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Under Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Bisignano should be substituted as the defendant in this suit. No further action needs to be taken to continue this suit through the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.   Procedural History

In a decision dated June 30, 2014, J.P., a minor child, was found disabled beginning May 27, 2014. (Tr. 79-94). On March 29, 2016, it was determined that J.P.'s disability continued. (Tr. 95–97). The March 2016 decision is the "comparison point decision" (CPD). On April 18, 2019, it was determined that J.P. was no longer disabled as of April 1, 2019. (Tr. 98–104). This determination was upheld upon reconsideration on August 16, 2019. (Tr. 135–41).

On September 4, 2019, Ms. Roberts requested a hearing before an administrative law judge (ALJ). (Tr. 145). On May 3, 2023, the ALJ held a hearing, and on April 17, 2024, the ALJ issued a decision finding J.P. not disabled. (Tr. 6–30, 42–50). On April 22, 2024, Ms. Roberts requested review of the ALJ's unfavorable decision with the Appeals Council, which was denied on June 21, 2024. (Tr. 1–5, 260). Thus, the hearing decision became the "final decision" of the Commissioner. Ms. Roberts now requests review of the ALJ's final decision. (Doc. 1).

## II.   Applicable Legal Standards

When determining whether an individual is disabled,[2] an ALJ typically

---

[2] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

follows the five-step sequential inquiry outlined in the Code of Federal Regulations (the Regulations), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; *see also Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

When the ALJ is determining whether a child's disability has ended, however, the Regulations mandate following a different sequential inquiry. *See* 20 C.F.R. §§ 404.1594a(f), 416.994a(b). This sequential inquiry asks, in substance: (1) whether the claimant has experienced medical improvement; (2) if the previous disability determination was based on the claimant meeting or medically equaling a listing, whether the current impairments meet or medically equal the same listing as it was written at the time of the previous disability finding; or, if previously found to be functionally equivalent to a listing, whether the current impairments functionally equal the listings; and (3) whether the claimant is currently disabled under the rules outlined in 20

---

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

3

C.F.R. § 416.924(c) and (d). See 20 C.F.R. §§ 404.1594a(f), 416.994a(b).[3]

To "meet" a Listing, a child must suffer from the limitations specified in the Listing. *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1279 (11th Cir. 2004). To "medically equal" the limitations found in a Listing, the child's limitations must be "at least of equal medical significance to those of a listed impairment." *Id.* (citing 20 C.F.R. § 416.926). Alternatively, suppose a child's impairment does not meet or medically equal a Listing. In that case, a child may nonetheless be found disabled if the child's impairment "functionally equals" a Listing, which is determined by the extent to which the impairment limits the child's ability to function in these six domains: (1) Acquiring and Using Information; (2) Attending and Completing Tasks; (3) Interacting and Relating with Others; (4) Moving About and Manipulating Objects; (5) Caring for Oneself; and (6) Health and Physical Well-Being. *Id.*; 20 C.F.R. § 416.926a(b)(1)(i)–(vi). A child's limitations "functionally equal" those in the Listings, and thus constitute a disability, if the child's limitations are "marked" in two of the six domains or are "extreme" in one of the six domains. 20 C.F.R. § 416.926a(a), (d).

---

[3] "When considering a case for termination or cessation of benefits, . . . the burden is on the Commissioner to prove that the claimant is no longer disabled as of the cessation date because the [p]laintiff had experienced 'medical improvement." *Townsend v. Comm'r of Soc. Sec.*, No. 6:13-cv-1783-Orl-DAB, 2015 WL 777630, at *3 (M.D. Fla. Feb. 24, 2015) (citing *Simpson v. Schweiker*, 691 F.2d 966, 969 (11th Cir. 1982), superseded by statute on other grounds as stated in *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991)); *Huie v. Bowen*, 788 F.2d 698, 705 (11th Cir. 1986).

In a cessation of benefits case, a modified standard is applied. The Commissioner must first consider whether there has been medical improvement in the child's impairment. 20 C.F.R. § 416.994a(a)(1). In a child's disability claim, medical improvement means a "decrease in the medical severity of [the child's] impairment(s) which was present at the time of the most recent favorable decision that [the child was] disabled or continued to be disabled." 20 C.F.R. § 416.994a(c). If there has been medical improvement, the Commissioner must consider whether the impairments the child had at the time of the most recent favorable determination or decision now meet or medically or functionally equal the severity of the listing it met or equaled at that time. 20 C.F.R. § 416.994a(a)(1). If the impairment does not still meet or equal the severity of the listed impairment, then the Commissioner will consider whether the child is currently disabled based on the current impairments, including impairments the child did not have at the time of the most recent favorable determination. 20 C.F.R. § 416.994a(b)(3).

### III.   Standard of Review

A determination by the Commissioner that a child is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401

5

(1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law or to give the reviewing court sufficient reasoning to determine that they have conducted the proper legal analysis mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## IV.  ANALYSIS

Ms. Roberts argues the ALJ erred by not comparing the medical evidence from the CPD (the March 2016 continuation of benefits) to that of J.P.'s disability end date (April 1, 2019). (Doc. 19, pp. 4–6). In response, the Commissioner contends the ALJ performed the requisite comparison of the

relevant medical evidence, and his conclusion is supported by substantial evidence. (Doc. 21, pp. 5–8).

Unless an exception applies, "there can be no termination of benefits unless there is substantial evidence of [medical] improvement to the point of no disability." *See McAulay v. Heckler*, 749 F.2d 1500, 1500 (11th Cir. 1985) (per curiam); *see also* 20 C.F.R. § 416.994a(b). The Eleventh Circuit instructs "that a comparison of the original medical evidence and the new medical evidence is necessary to make a finding of improvement." *McAulay*, 749 F.2d at 1500. "The ALJ must 'actually compare' the previous and current medical evidence to show that an improvement occurred . . . If the ALJ fails to evaluate the prior medical evidence and make such a comparison, we must 'reverse and remand for application of the proper legal standard.'" *Klaes v. Comm'r Soc. Sec.*, 499 F. App'x 895, 896 (11th Cir. 2012) (citing *Freeman v. Heckler*, 739 F.2d 565, 566 (11th Cir. 1984)) (per curiam).

On June 30, 2014, J.P. was found disabled beginning May 27, 2014, because of an extreme limitation in the domain of "Acquiring and Using Information," caused by an expressive language delay. (Tr. 54–55). On March 29, 2016, J.P.'s disability benefits continued because he had not experienced medical improvement. (Tr. 95–97, 555–60). Then, the ALJ found that J.P. experienced medical improvement by April 1, 2019, because of improvement in expressive speech. (Tr. 13). In reaching that conclusion, the ALJ compared the

relevant medical evidence, which was a March 2016 consultative examination used to determine that J.P.'s disability continued at the time of the CPD, and a March 2019 examination that showed medical improvement. (Tr. 13, 550–54, 607–14).

During the March 2016 consultative examination, J.P. demonstrated impaired expressive communication, impaired articulation skills, and reduced speech intelligibility. (Tr. 554). The medical record states, "[J.P.] is not able to functionally relate wants, needs, and/or ideas. [J.P] does not exhibit language/articulation/phonological skills commensurate to chronological/developmental age." (*Id.*). "The unfamiliar listener was able to understand 50% of [J.P.'s] spontaneous utterances in unknown context with reception." (*Id.*).

By comparison, the March 2019 consultative examination demonstrates J.P possessed receptive and expressive language skills within normal limitations. (Tr. 614). J.P.'s language fluency was normal. (*Id.*). J.P.'s oral motor skills were somewhat delayed due to his lack of adequate tongue mobility, but articulation skills were normal, with intelligibility in sentences between 75 and 90 percent accuracy. (*Id.*). Speech therapy was not recommended at that time. (*Id.*).

The March 2016 and March 2019 consultative examinations evidence material impairment in J.P.'s expressive language delay. The ALJ compared

the consultative examinations and properly found J.P. experienced medical improvement by April 1, 2019. (Tr. 13). The ALJ's finding of medical improvement was also consistent with the opinions of the state agency medical consultants Heather Hernandez, Ph.D., and Lawrence Ettinger, M.D., which were based on comparisons of the relevant medical evidence and were given great weight by the ALJ. (Tr. 20, 61–75).

Ms. Roberts further argues there is "no logical bridge between an improvement in speech articulation and improvement in acquiring information." (Doc. 19, p. 6). However, the basis for which J.P. was found to have an extreme limitation in "Acquiring and Using Information" (and was therefore disabled) in both 2014 and 2016 was his expressive language delay. (*See* Tr. 54–55, 95–97, 555–60). The ALJ examined the evidence relevant to the finding of disability continuation in March 2016 to determine whether medical improvement had occurred by the ALJ's decision in April 2019. The ALJ's finding that J.P. experienced medical improvement between March 2016 and April 2019 applied the correct legal standard and is supported by substantial evidence.

## V.    CONCLUSION

For the reasons stated, the Commissioner's decision is **AFFIRMED**, and the Clerk is directed to enter judgment for the Commissioner and close the case.

9

**ORDERED** in Tampa, Florida, on August 4, 2025.

AMANDA ARNOLD SANSONE
United States Magistrate Judge

10